IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01770-LTB-MEH

NORMAN CATMAN,

    Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA (C.C.A.), and
JOHN AND JANE DOES #1 - #15,

    Defendants.

---

## RECOMMENDATION ON MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is a Motion to Dismiss filed by Defendant Corrections Corporation of America [filed December 17, 2008; docket #49]. The matter is briefed and has been referred to this Court for recommendation [docket #51]. Oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated below, this Court recommends that Defendant's Motion to Dismiss be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

According to his Amended Complaint, Plaintiff was incarcerated at the Kit Carson Correctional Facility in September 2007 to serve a 180-day parole violation. (Docket #28 at ¶4.) In November 2007, the inmate population, including Plaintiff, was offered a flu vaccination by the medical department at the Kit Carson Correctional Facility. (*Id.* at ¶5.) Plaintiff explained to the nurses in the medical department that he needed a Pneumovax 23 shot, as he was without a spleen, and it was time for him to be re-vaccinated. (*Id.* at ¶6.) The nurses in the medical department advised Plaintiff that they would check on getting his shot, and that he should submit a kite requesting the vaccination. (*Id.* at ¶7.) Plaintiff was advised the next day at the medication dispensary that the corporate office would need to make the decision on whether to provide the vaccination. (*Id.* at ¶8.)

Approximately one week later, while at the medication distribution window, Plaintiff was advised that because he was paroling in a few weeks "corporate [was] going to stall and not give [him] the shot." (*Id.* at ¶9.) Plaintiff was paroled on December 12, 2007 and, on December 17, 2007, he was admitted to Denver Health Medical Center and treated for bacterial pneumonia. (*Id.* at ¶10.) He was released from the hospital on December 21, 2007, but had to return on December 24, 2007 for dehydration and breathing problems related to the pneumonia. (*Id.* at ¶12.)

Plaintiff alleges that "the head of the medical department" for Defendant Corrections Corporation of America, and "all subordinates" including "doctors, nurses, nurse practitioners, physician assistants and all other persons found to be culpable through discovery" knew about his medical issues, since his medical file contained information regarding the splenectomy, but they both willfully and negligently ignored his request for treatment. (*Id.* at ¶14-¶15.) Specifically, he

asserts that Defendants "committ[ed] malpractice, negligence with deliberate indifference and violat[ed] the plaintiffs [sic] eighth (8) and fourteenth (14) amendment rights, of equal protection under the law and freedom from cruel and unusual punishment." (*Id.*) In addition, Plaintiff asserts that his hospitalization was a "direct result of defendants [sic] willful disregard for his safety." (*Id.* at ¶16.)

## DISCUSSION

I. **Standard of Review**

    A.    <u>Dismissal under Fed. R. Civ. P. 12(b)(6)</u>

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief-- that is -- a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

3

B. Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d at 1106, 1110 (10th Cir. 1991). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## II. Municipal Liability under 42 U.S.C. § 1983

It is undisputed in this case that Defendant is a private entity acting under color of state law and, thus, subject to claims pursuant to 42 U.S.C. § 1983. Traditional municipal liability principles apply to claims brought pursuant to § 1983 against private corporations. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (the *Monell* doctrine has been extended to private entities acting under color of state law).

The doctrine of *respondeat superior* cannot be employed to hold governmental entities liable under § 1983 for the constitutional torts of their employees. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1283 (10th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). But a municipality may be liable under § 1983 if enforcement of its policies causes a constitutional deprivation. "[I]t is when execution of a government's policy or custom . . . inflicts

the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 691. Thus, a plaintiff must show that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

To survive a motion to dismiss, the Plaintiff must assert a short and plain statement alleging (1) the existence of a corporate custom or policy, (2) a constitutional violation, and (3) a direct and causal link between the custom or policy and the violation alleged. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights); *see also Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006) (a municipality cannot be held liable absent unconstitutional conduct by its representatives).

A. Official Policy or Custom

To impose liability against a municipality, the alleged policy must be a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the public entity's officers. *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir. 1996) (internal quotation marks and citation omitted). "If a violation cannot be characterized as official policy, then [a municipality may] still be held liable if the practice is so permanent and well-settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks and citations omitted). A custom has been interpreted to mean "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall v. Columbia Lea Reg'l Hosp.,* 345 F.3d 1157, 1177 (10th Cir. 2003) (citation omitted).

In this case, the Plaintiff first argues that "the fact that the staff of the medical department at [the facility] were instructed to contact [sic] corporate office for authorization before performing duties and treatments constitutes a policy." Docket #63 at 4. However, as stated in the Amended Complaint, the alleged constitutional deprivation arose not from enforcement of the authorization requirement but from the decision not to vaccinate the Plaintiff before his parole. Therefore, Plaintiff's first argument is without merit.

However, the Plaintiff also argues "it is a long standing policy of C.C.A. to cut corners and save money anywhere possible no matter what the outcome." *Id.* at 5. Accepting Plaintiff's allegations as true, the Court finds that a decision not to vaccinate based upon a custom or policy of saving money "no matter the outcome" that leads to a constitutional injury properly alleges a potential widespread practice that is "so permanent and well settled as to constitute a custom or usage with the force of law."[2] *See, e.g., Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989) (municipalities may be held liable for a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity").

---

[2]As stated above, a municipality may also be held liable if the unconstitutional acts are undertaken by municipal officials with final policymaking authority. *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). Municipal liability may be imposed for a decision or action of a municipal policymaker, where that decisionmaker possesses "final authority" to establish municipal policy with respect to the action ordered. *Id.*; *see also Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986) ("while the quintessential policy is a municipality's 'established fixed plans of action to be followed under similar circumstances consistently and over time,' policy can also be established pursuant to a specific and one-time decision made by a 'final policymaker'"). Here, Plaintiff also alleges that the "head of the medical department" and "subordinates" caused his injuries by deciding not to vaccinate him. At this stage of the litigation, the Court is without sufficient information to determine whether the "head of the medical department" or other CCA employee is a final policymaker; therefore, unless the claims are dismissed otherwise, they should proceed through discovery on this issue.

B.  Constitutional Violation

Plaintiff alleges violations of the Eighth (deliberate indifference) and Fourteenth (equal protection) Amendments by the Defendant, who "knowingly and willfully allow[ed] the plaintiff to be paroled and sent to the streets without treating his serious medical problem." Docket #28 at ¶14.

1.  Fourteenth Amendment

Defendant argues that Plaintiff's Amended Complaint contains only conclusory allegations regarding his equal protection claim.  The Court agrees that Plaintiff's allegations regarding any Fourteenth Amendment claim are insufficient to withstand a motion to dismiss.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae,* 448 U.S. 297, 323 (1980). To properly allege an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002).

In this case, Plaintiff fails to show he is "similarly situated" to any particular group.  The Complaint contains no allegations that demonstrate other similarly situated inmates received a "pneumovax" vaccination while he did not.[3] In addition, Plaintiff has not shown any disparate

---

[3]Defendant's primary argument in its motion centers on a supposed inherent "conflict" between Plaintiff's allegations identifying a policy not to vaccinate and his equal protection allegations that all inmates received the vaccination but he did not.  Docket #70 at 4.  The Court

7

treatment or purposeful discrimination. In fact, Plaintiff fails to allege any specific facts upon which this Court may discern a claim for a violation of the Equal Protection Clause. Accordingly, the Court recommends that Plaintiff's Fourteenth Amendment equal protection claim against Defendant be dismissed.

2. Eighth Amendment

Defendant makes no argument in its motion that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim; therefore, taking the Plaintiff's allegations as true, the Court will assume Plaintiff has stated a claim. Even if Defendant had challenged Plaintiff's claim, however, the Court believes Plaintiff has stated a plausible Eighth Amendment claim.

It is well established that prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (internal quotation marks omitted). However, a claim based on "an inadvertent failure to provide adequate medical care" or alleging "that a physician has been negligent in diagnosing or treating a medical condition" does not state a valid claim of medical mistreatment under the Eighth Amendment. *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006) (citations omitted). "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' " *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle,* 429 U.S. at 106).

---

disagrees. A review of the Amended Complaint and Plaintiff's response to the motion reveals no allegations that other inmates received the pneumovax vaccination; rather, the Plaintiff believes he is similarly situated to other inmates in that they all rely on Defendant for their medical needs while incarcerated. *See* docket #63 at 6-7 ("for the fact that [Plaintiff] relies on the prison officials for his needs as do all of the other inmates, and the fact he was denied his vaccination because he was different is discrimination and did violate his rights of equal protection").

To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements. The objective component is met if the deprivation is "sufficiently serious," *i.e.*, one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999)). The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000). A prison medical professional who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role. *Id.* at 1211. "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted).

The "actual knowledge" prong of the subjective component does not require that a prison official know a prisoner would, with certainty, be harmed, or that a particular prisoner would be harmed in a certain way. *Curry v. Scott*, 249 F.3d 493, 507 (6th Cir. 2001). "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here, Plaintiff alleges that Defendant refused to provide him a pneumovax vaccination based upon a custom or policy of "saving money no matter the outcome," even though Defendant knew

9

Plaintiff needed the vaccination due to a splenectomy, and such refusal resulted in his contracting pneumonia only days after he was paroled in December 2007. The Court finds that, if true, Plaintiff's allegations are sufficient to show that Defendant may have "acted or failed to act despite knowledge of a substantial risk of serious harm." Therefore, the Court recommends finding that Plaintiff has stated an Eighth Amendment claim that is "plausible on its face."

C. Direct Causal Link

Plaintiff alleges that in or about November 2007, Defendant refused him a pneumovax vaccination. Plaintiff was paroled on December 12, 2007, then admitted to the hospital five days later for treatment of bacterial pneumonia. Defendant does not address the causation prong of the municipal liability analysis in its motion to dismiss, nor challenge whether Plaintiff has sufficiently asserted causation. Therefore, accepting Plaintiff's allegations as true, the Court recommends finding that Plaintiff has sufficiently alleged his injury may have been caused by Defendant's refusal to vaccinate him.[4]

Consequently, the Court recommends denying Defendant's motion to dismiss based on municipal liability for Plaintiff's Eighth Amendment claim.[5]

## CONCLUSION

---

[4]The Court notes that a "deliberate indifference" standard has been applied for analyzing causation in certain municipal liability cases. *See Brown*, 520 U.S. at 411. Such standard is typically applied to claims for failure to hire or failure to train; however, the Court found no case in this, or any other, district in which the standard was applied to an Eighth Amendment claim. *See, e.g., Curry v. Scott*, 249 F.3d 493, 507 n.6 (6th Cir. 2001) (noting the difference between the "deliberate indifference" standards for municipal liability and for Eighth Amendment claims).

[5]Because the Court recommends denying the motion to dismiss as to the federal Eighth Amendment claim, it need not address Defendant's argument that the Court should decline supplemental jurisdiction over Plaintiff's state law claims.

Accordingly, for the reasons stated above, it is hereby RECOMMENDED that Motion to Dismiss filed by Defendant Corrections Corporation of America [filed December 17, 2008; docket #49] be **granted in part and denied in part**. The Court recommends granting the motion with respect to Plaintiff's Fourteenth Amendment equal protection claim and dismissing such claim with prejudice against Defendant. However, because Defendant failed to demonstrate that Plaintiff's deliberate indifference allegations are facially implausible, the Court recommends denying the motion with respect to the Eighth Amendment claim.

Dated at Denver, Colorado, this 11th day of March, 2009.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge